# Simon & Son v. Johnson.

*Action of Assumpsit.*

1. *Agency; authority of travelling salesman.*—A travelling salesman, making contracts of sales of merchandise by sample, goods to be de-

[Simon & Son v. Johnson.]

livered by the principal, and price to be paid on delivery, or on receipt of invoice, or upon the happening of some future event, has no implied authority to collect from the purchaser the money agreed to be paid, and the payment to such agent, without express authority, will not discharge the debtor from his liability to the principal.

2. *Same; custom and usage.*—The fact that in a town where goods were sold by a travelling salesman by sample, there prevails a custom for the merchants to pay said salesmen for the goods purchased, does not authorize or justify the payment to such travelling salesman, the agent of a non-resident firm, unless it is also shown that the principal had notice of such custom.

3. *Custom and usage; irrelevant evidence.*—In an action on a verified account, when it is shown that the account sued on had been paid to plaintiffs' travelling salesman, who sold the goods by sample, but had no authority to receive payment therefor, evidence that in a town where the sale was made it was a custom among the merchants to pay the travelling salesman for goods purchased, is not competent in the absence of other evidence tending to show that the principal had notice of such custom.

APPEAL from the Circuit Court of Geneva.

Tried before the Hon. J. M. CARMICHAEL.

This was an action of assumpsit, counting on the common counts, brought by the appellants, J. Simon & Son, against J. J. Johnson.

The plaintiffs introduced in evidence a verified account for goods sold by them to defendant. The defendant testified in his own behalf that he bought the goods specified in the verified statement of plaintiffs' account from one J. B. Carlisle, who was a drummer for plaintiffs; that he arranged with said Carlisle to discount said bill at 8 *per cent.* upon receipt of invoice, and it had been his, defendant's, custom, for 8 or 10 years, to pay drummers for goods bought from them; and it was the general custom of the merchants in Geneva to pay drummers the money for goods bought from them; that he had never bought but one bill before this one from the plaintiffs, but did not remember whether he paid the drummer or remitted direct to the plaintiffs; that he paid the present bill, less the discount, to the said Carlisle, and took Carlisle's receipt in full for the same, and wrote to the plaintiffs at once that he had paid the amount due them to said Carlisle, and that, according to his recollection, plaintiffs did not reply to said letter. The plaintiffs objected to the evidence of the custom of the merchants of Geneva, ''unless he first proved that it was

24

the custom of J. Simon & Son to allow their drummers to collect for goods sold in Geneva.'' The court overruled this objection, and the plaintiffs duly excepted. The plaintiffs further objected to said evidence on the ground that the time proven was not long enough to constitute a custom or usage. The court also overruled this objection, and plaintiffs duly excepted. In rebuttal the plaintiffs introduced testimony to the effect that, on the receipt of Johnson's letter, they immediately wrote him that Carlisle was not authorized to collect the amount due on said account, and that his receipt would not be recognized.

Upon the introduction of all the evidence the plaintiff requested, among other written charges, the following: "If the jury believe the evidence, they will find for the plaintiffs." The court refused to give this, as well as other charges requested by the plaintiffs, and to the refusal to give each of them the plaintiffs separately excepted. There was judgment for defendant. The plaintiffs appeal, and assign as error the several rulings of the trial court to which they reserved exceptions. It is not deemed necessary to set out in detail these several rulings.

J. J. MORRIS and W. D. ROBERTS, for appellants.

M. E. MILLIGAN, *contra*.

McCLELLAN, J.—The decided weight of authority, indeed well nigh all the adjudged cases, support the proposition that a travelling salesman of merchandise, making sales by sample on a credit or for cash to be paid on receipt of the goods or the invoice of them, has no implied authority to collect the money agreed to be paid from the purchaser.—2 Am. & Eng. Encyc. of Law, p. 355 and notes; *Kane & Co. v. Barstow*, 42 Kan. 465, s. c. 16 Amer. St. Rep. 490, and note 494; *McKindly v. Dunham*, 55 Wis. 515, s. c. 42 Am. Rep. 740; *Kohn v. Washer*, 64 Tex. 131, s. c. 53 Am. Rep. 745; *Butler v. Dorman*, 68 Mo. 298, s. c. 30 Am. Rep. 795; *Law v. Stokes*, 90 Am. Dec. 655; *Korneman v. Monaghan*, 24 Mich. 36; *Clark v. Smith*, 88 Ill. 298; *Higgins v. Moore*, 34 N. Y. 417; *Greenleaf v. Egan*, 30 Minn. 316; *Seiple v. Erwin*, 30 Pa. St. 513.

The particular facts of the Maine case, relied on by

[Simon & Son v. Johnson.]

counsel for appellee, prevent it from being an authority against the proposition just stated.    The opinion in that case, indeed, recognizes the soundness of the rule declared in *Higgins v. Moore* and *McKindly v. Dunham, supra*, and in effect bases the conclusion that payment was well made to the agent mainly, if not entirely, on the facts that the "agent assumed to complete a contract of sale, specific in terms, stipulating that payment was to be made to himself," and that, "after the goods had been delivered, he presented for payment a bill, made upon a genuine 'bill-head' of his principal."    Neither of these facts is in the present case or was involved in the cases cited.    Without committing ourselves to the effect accorded them by the Maine court, it is readily conceivable that there is much reason for according them an important influence in shaping the conclusion reached.—*Trainor v. Morison*, 78 Me. 160, s. c. 57 Am. Rep. 790.    The Vermont case, relied on by the appellee, involved the sale by one Allen, who was in fact a travelling salesman for plaintiff's firm, but who represented himself to be a member of the partnership, and upon that representation made the contract of sale with the defendants.    This contract embodied a stipulation that defendants should pay Allen for the goods, when he should come to their city on his next trip, in about three months; and the decision is based on this express stipulation for payment to Allen, in connection with the consideration that defendants had a right, under all the circumstances, to rely upon Allen's making a truthful report of the terms of the sale, and to suppose that the goods were sent pursuant to the contract as made; a view which finds nothing in the present case to rest upon.—*Putnam v. French*, 53 Vt. 402, s. c. 38 Am. Rep. 682.    The only case to which we have been referred, or which our own investigation has disclosed, that really sustains the position taken for appellee is that of *Collins & Co. v. Newton*, 7 Baxt. (Tenn.) 269.    No great degree of investigation or consideration is evinced by the opinion of the court, and in reaching the conclusion announced no account seems to have been taken of the distinction, undoubtedly very important, between agents *to make contracts of sale* by sample to be filled through a delivery of the goods by the principal, time being given for payment, or payment to be made on delivery by the principal, and agents who, having

the property of the principal *in their possession* for that purpose, *sell and presently deliver it* to the purchaser. The question has not been decided in Alabama. We are content, however, to follow the very numerous cases which hold that such an agent has no implied power to collect from purchasers for goods sold and delivered in the manner shown in this record. The agent has not the goods, and does not deliver them, *prima facie* his agency is discharged when he makes a contract of sale, and takes an order for delivery by the principal. The sole purpose of his itineracy is to induce parties, having need of the wares in which his principal deals, to buy them from the house he represents. In doing this he, in a sense, has taken the place of ordinary advertisement and orders through the mails to the wholesale dealer, which obtained in the course of such transactions before his day. Having done this in a given instance, at a particular place, and made report to his employer, he passes on, and it is the merest accident if he is again at that place at the time the bill falls due, or if the purchaser at such time knows his whereabouts. To hold that an agency simply to make and report such contracts of sale, under these circumstances, involves an agency to collect the contract price when the account matures, a matter wholly beyond the exigencies of commerce which brought these agencies into being, inconvenient of accomplishment and entirely unnecessary, in such sort that it is to be assumed that the principal held the agent out as empowered to collect, would be too radical a departure from elementary principles of the law of agency to be tolerated. To the contrary, we hold that a travelling salesman, making contracts of sale by sample, goods to be delivered by the principal and the purchase money to be paid on delivery, or at any other time transpiring, or upon any other event happening in the future, is, upon these facts and without more, wholly unauthorized to receive payment, and, of consequence, that payment made to him will not discharge the debtor from his liability to the principal.

It is insisted, however, in this case that the payment was authorized and justified by a custom prevailing generally in the town of Geneva, where the contract of sale was made, the goods delivered subsequently, and the price paid, also subsequently, to the agent, for payments

[Smith et al. v. Boutwell et al.]

to be made in this way. The plaintiffs, whom this agent was representing, lived and carried on their business in New Orleans. Conceding that the usage itself was established by the evidence, it did not authorize or justify the payment to the agent, or in any manner change or affect the rights of the principals, unless it had also been proved that they had notice of it.—*German American Ins. Co. v. Commercial Fire Ins. Co.*, 95 Ala. 469, 11 So. Rep. 117. This was not only not proved, but there was no evidence adduced which legitimately tended to prove it. The only fact relied on as having such a tendency is, that some years previously the defendant had purchased a bill of goods from a firm in New Orleans, paid the bill at maturity to the travelling salesman who took the order, informed the firm of the fact, that they did not dissent from or object to this mode of payment, and that one member of that firm is now a member of the plaintiff firm. It is, we think, too clear for discussion that as proof of this one, isolated transaction would be no evidence of the alleged custom, so notice of it would be no evidence of notice of such custom.

Many of the rulings and instructions of the trial court are out of harmony with the law applicable to this case as we find it to be. We need not particularize them. The judgment must be reversed and the cause remanded; and if the evidence on another trial is the same we find in this record, it will be the duty of the court, upon request, to give the affirmative charge for the plaintiffs.

Reversed and remanded.